UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



MONICA J.,

    Plaintiff,

v.

1:20-CV-582 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## DECISION AND ORDER

Plaintiff Monica J.[1] ("Plaintiff") brought this action under the Social Security Act, seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 19. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 23. Plaintiff replied. Dkt. 26.

For the reasons below, the Court grants Plaintiff's motion in part and denies the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

On October 6, 2016, Plaintiff applied for applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability since October 11, 2011. Dkt. 1, at 1-2; Dkt. 19-1, at 2. Plaintiff's applications were initially denied by the Social Security Administration on January 9, 2017. Tr. 104.[2] Plaintiff then filed a written request for a hearing on March 20, 2017, which took place before an Administrative Law Judge ("ALJ") on December 6, 2018. *Id.* at 110, 74. The ALJ issued an unfavorable decision to Plaintiff on January 2, 2019, confirming that she was not disabled. Tr. 58. The Appeals Council denied Plaintiff's request for review on March 18, 2020. *Id.* at 28. Plaintiff then commenced this action. Dkt. 1.

## LEGAL STANDARDS

### I.   District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

---

[2] All filings at Dkt. 11 are the transcript of proceedings before the Social Security Administration. All references to Dkt. 11 are denoted "Tr. __."

2

Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II.   <u>Disability Determination</u>

An ALJ evaluates disability claims through a five-step process established by the Social Security Administration to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520(a).[3] At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the

---

[3] The Social Security Administration uses the same five-step evaluation process to determine eligibility for both DIB and SSI. *See* 20 C.F.R §§ 404.1520(a) (concerning DIB); 416.920(a)(2) (concerning SSI).

3

claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If the claimant does have any severe impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations and meets the duration requirement, the claimant is disabled. *Id.* §§ 404.1520(a)(4)(iii), (d).

But if the ALJ finds that no severe impairment or combination of impairments meets or equals an impairment in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(a)(4)(iv), (e). The RFC is a holistic assessment that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for his or her collective impairments. *See id.* §§ 404.1520(e), 404.1545.

The ALJ then proceeds to step four and determines, using the claimant's RFC, whether the claimant can perform past relevant work. *Id.*

4

§§ 404.1520(a)(4)(iv), (e). If the claimant can perform past relevant work, he is not disabled, and the analysis ends. *Id.* §§ 404.1520(a)(4)(iv), (f). But if the claimant cannot, the ALJ proceeds to step five. *Id.* §§ 404.1520(a), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), (g). Specifically, the Commissioner must prove the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotations and citation omitted).

## DISCUSSION

### I. The ALJ's decision

The ALJ evaluated Plaintiff's claim for benefits under the process discussed above. *See generally* Tr. 63-68. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.[4] Tr. 63.

At step two, the ALJ determined that Plaintiff had the following severe impairments: pelvic varicosities and obesity.[5] *Id.* At step three, the ALJ concluded

---

[4] The ALJ found that Plaintiff did not engage in substantial gainful activity from her alleged onset date of October 11, 2011 through the date of last insured of September 30, 2016. Tr. 63. Though Plaintiff had worked after the alleged onset date, the ALJ found "this work activity did not rise to the level of substantial gainful activity." *Id.*

[5] Also at step two, the ALJ found that Plaintiff suffered from the "additional impairments" of hypertension, diabetes, and migraine, though he determined these impairments not to be severe. Tr. 64. The ALJ also discussed Plaintiff's obesity at step two. Tr. 63-64. He considered Plaintiff's body mass index ("BMI") under the

5

that Plaintiff's impairments did not meet or medically equal the severity of the impairments listed in the regulation. Tr. 64. The ALJ then determined Plaintiff had the RFC to perform "light work as defined in 20 CFR § 404.1567(b) except she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, or crawl." *Id.*

At step five, the ALJ determined that Plaintiff could perform past relevant work as a surgical technician.[6] Tr. 67. Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id.*

## II. Analysis

Plaintiff asks the Court to vacate the Commissioner's decision and remand for further proceedings to develop the record. Dkt. Item 19-1, at 18, *see also* Dkt. 26, at 9. Plaintiff makes a single broad argument in support of her motion. *See generally* Dkt. 19. She asserts that the ALJ improperly formulated her RFC by substituting his own lay interpretation of raw medical data in place of a medical opinion. *Id.*

---

National Institute of Health's clinical guidelines and found Plaintiff to be obese. Tr. 63-64. The ALJ then indicated that he considered the "adverse impact [of obesity] upon co-existing impairments" in his analysis at steps two, three and four, as required by SSR 02-1p. Tr. 64.; *see also* SSR 02-1P, 2002 WL 34686281, at * 1 (S.S.A. Sept. 12, 2002).

[6] The ALJ credited the vocational expert's testimony in making his determination at step five. Tr. 67. The vocational expert found that though Plaintiff had performed her past work as a surgical technician at "a very heavy level[,]" someone with her RFC could perform this work "as generally performed." *Id.* The ALJ agreed and adopted the vocational expert's conclusion that Plaintiff could perform her past relevant work as a surgical technician. *Id.*

6

For the reasons set forth below, Plaintiff's argument has merit and, as such, her motion is granted in part.

A.  **The ALJ improperly rejected all medical opinion evidence of record.**

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2).

Not all statements from treating sources constitute opinion evidence entitled to controlling weight, however. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

The Court acknowledges that, under the treating physician rule from the time of the ALJ's determination, the ALJ was not required to give controlling weight to a treating nurse practitioner's opinion because nurse practitioners were considered non-acceptable medical sources. SSR 06-3p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006); *see also Eusepi v. Colvin*, 595 F. App'x 7, 8–9 (2d Cir. 2014)

7

("While opinions from other sources are properly considered in assessing claimed disability, [] they need not be given the controlling weight accorded to opinions from treating medical sources").

Here, the ALJ assigned little or no weight to the only medical opinion evidence in the record. Tr. 66-67. Nurse practitioner Misty Willis ("NP Willis") completed several employability assessments over the course of her treating relationship with Plaintiff. Tr. 459-468. In each report, NP Willis opined as to Plaintiff's functional limitations relating to work capabilities. *Id.* For example, she found Plaintiff to be "very limited" in sitting, standing, walking, lifting, carrying, bending, and climbing. Tr. 462, 464, 465. NP Willis cited Plaintiff's limitation on pacing in a work setting throughout multiple reports. Tr. 462, 465, 468. She limited Plaintiff to lifting a maximum of ten pounds and to only doing a "sit down job." Tr. 468.

The ALJ gave little weight to NP Willis's reports (Tr. 459-468) and no weight to "similar forms" (Tr. 459-460, 960-61) because they did not "address the period at issue." Tr. 67. In assigning some reports little weight, the ALJ rejected all "very limited" findings by NP Willis for lack of explanation within the report itself or support in the record generally. *Id.* The ALJ claimed findings of Plaintiff's moderate limitations were incorporated into the RFC. *Id.* However, an examination of the RFC disproves this claim. The only moderate limits in NP Willis's reports referred to Plaintiff's ability to work at a consistent pace. Tr. 460,

8

465, 468. The ALJ did not include any limitations in the RFC for work pace (Tr. 64), however, so it is unclear how he incorporated those findings into the RFC.

While the ALJ is free to properly reject findings from treating providers, he "must still base [his] conclusion on some medical opinion or otherwise articulate the overwhelmingly compelling reasons for not doing so." *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020). And in crediting other opinion evidence, "[t]he adjudicator generally should explain the weight given to opinions from [non-acceptable medical] sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2).

The ALJ did not provide such an explanation of the weight given to NP Willis's opinions. At one point in step four, the ALJ credited NP Willis's findings of moderate limitation on consistent work pace over her findings of no limitation (Tr. 464) or "very limited" (Tr. 462) where NP Willis's findings differed across multiple reports. Tr. 67 (citing TR. 465). This isolated explanation does not alone, or in conjunction with the rest of his RFC analysis, "afford[] an adequate basis for meaningful judicial review" of the ALJ's process. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). It is especially important for the ALJ to provide clear reasoning where, as here, the overall record does not alone "permit[] [the reviewing court] to glean the rationale of an ALJ's decision." *Mongeur v. Heckler*, 722 F.2d 1033, 1040

9

(2d Cir. 1983). The ALJ's explanation as presented is insufficient to support a finding of substantial evidence in support of his RFC determination.

### B. Without a medical opinion or functional assessment, the ALJ's determination was unsupported by substantial evidence.

An ALJ may not substitute his lay judgment for the opinions of medical professionals, and when there is no medical opinion to support a plaintiff's ability to perform a certain function, the ALJ cannot create an RFC from whole cloth. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding . . . it is well-settled [sic] that the ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion." (citation and internal quotation marks omitted)).

Plaintiff's RFC reflects that she be able to "occasionally climb ramps, stairs, ladders, ropes, and scaffolds" and "occasionally balance, stoop, kneel, crouch, or crawl." Tr. 65. The record, however, does not contain any mention of Plaintiff's abilities or limits in these areas. The ALJ also found that limits for "standing and walking a combined total of only six hours a day" would adequately accommodate Plaintiff's symptoms of physical pain. Tr. 66. The ALJ cites no authority from the record in support of this conclusion. In fact, the ALJ conceded that Plaintiff had "tenderness and painful range of motion," which may contribute to difficulty ambulating. *Id.*

The Commissioner argues that the ALJ need not rely on a medical opinion "where the record contains sufficient evidence for the ALJ to assess the claimant's RFC." Dkt. 23-1, at 14. In support of his RFC determination, the ALJ recited

10

findings from treatment notes, referrals, and testing. Tr. 65-66. But this evidence was not sufficient to assess Plaintiff's RFC. To support its assertion, the Commissioner relies on the Second Circuit's decisions in the cases of *Matta v. Astrue*, 508 F. App'x 53 (2d Cir. 2013), and *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. 2017) (citing *Pellam v. Astrue*, 508 F. App'x 87 (2d Cir. 2013)), where the ALJ also rejected opinion evidence.

Unlike in those cases, the records the ALJ relied on here "do not shed any light on [Plaintiff]'s residual functional capacity." *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017); *see also Monroe*, 676 F. App'x at 8-9 (2d Cir. 2017) (where the ALJ properly rejected a medical opinion where the record otherwise contained assessments relevant to the plaintiff's ability to perform sustained gainful activity upon which he based the RFC). More specifically, the evidence cited by the ALJ "offer[s] no insight into how [Plaintiff's] impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life." *Guillen*, 697 F. App'x at 109 (2d Cir. 2017).

Without a medical opinion on the record, without a useful assessment of Plaintiff's functional limitations, and with evidence suggesting greater limitations on her work-related abilities, the RFC is not supported by substantial evidence. *See Deborah H. v. Comm'r of Soc. Sec.*, No. 19-CV-425, 2021 WL 1608574, at *5 (W.D.N.Y. Apr. 23, 2021). Therefore, remand is warranted for further administrative proceedings.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings (Dkt. 19) is **GRANTED** in part, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. 23) is **DENIED**. The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this opinion.

SO ORDERED.

Dated:   February 14, 2022
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE